IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                          RESPONDENT

v.                    No. 6:08-cr-60003-RTD-BAB
                      No. 6:14-cv-06063

JEFFREY SCOTT RAND                                                                      MOVANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed herein by Jeffrey Scott Rand (hereinafter referred to as "Rand"), an inmate confined at the Federal Bureau of Prisons FCI Sheridan in Sheridan, Oregon.

The Motion was referred for findings of fact, conclusions of law and recommendations for the disposition of the case. The United States of America (hereinafter referred to as the "Government") has responded to the Motion. ECF No. 75. Rand has replied. ECF No. 78. The Court has considered the entire record, and this matter is ready for decision. For the reasons stated below, the Court recommends the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 72) be **DENIED**.

**1.     Background**:

    **A.     Indictment**

On March 5, 2008, Rand was named in a twenty-five (25) count Indictment filed in the United States District Court for the Western District of Arkansas. ECF No. 1. By way of background, Rand was the owner and president of Wave Energy, Inc. ("Wave").[1]  *Id.* ¶ 1(a), (c).

---

[1] Also relevant to this case, Wave Partners, Inc. was a Texas corporation owned by Rand.

Wave was a Delaware corporation with its principal place of business located in Hot Springs, Arkansas. *Id.* Its operations were conducted in Hot Springs, Arkansas from "on or about September 2001 to on or about April 2005." *Id.*

During this time, Wave was involved in drilling operations on the Rancho Blanco Corporation State lease ("Rancho Blanco lease"). The Rancho Blanco lease "was an oil and gas lease in Jim Hogg and Zapata Counties in Texas, in which Wave owned, had an option to acquire an interest in wells, and/or had a shared interest with others in wells." ECF No. 1 ¶ 1(d). There are five wells relevant to this case:

1. The Rancho Blanco Corporation State Gas Unit No. 2 Prospect was an investment program involving a well ("RB2") to be drilled on the Rancho Blanco lease;

2. The Rancho Blanco Corporation State Gas Unit No. 3 Prospect was an investment program involving a well ("RB3") to be drilled on the Rancho Blanco lease;

3. The Rancho Blanco Corporation State Gas Unit No. 4 Prospect was an investment program involving a well ("RB4") to be drilled on the Rancho Blanco lease;

4. The Rancho Blanco Corporation State Gas Unit No. 1 Redrill Prospect was an investment program involving a well ("RB1 Redrill") on the Rancho Blanco lease; and

5. The North Monte Christo Prospect was an investment program involving the Morris No. 1 well ("NMC") in Hidalgo County, Texas.

*Id.* According to the Indictment, Rand had obtained the right to drill wells on the Rancho Blanco lease. ECF No. 1 ¶ 1(j). Rand "attempted to obtain the rights to drill wells on the NMC lease, but ultimately failed to obtain such rights." *Id.* ¶ 1(l).

Despite the fact Rand had no working or ownership interest in the NMC lease, Rand "prepared, sent, and caused to be sent solicitation materials and investment documents from Wave through the United States mails, commercial interstate carriers, and interstate wire facilities to

individuals located throughout the United States, to induce them to purchase interests in RB2, RB3, RB4, RB1 Redrill, and NMC." ECF No. 1 ¶ 1(m). Rand also "caused investors in RB2, RB3, RB4, RB1 Redrill, and NMC to send investment documents and funds" through the United States mail, and Rand "sent and received documents" through the United States mail "which related to investors' interest in the wells and the status of the wells." *Id.* ¶ 1(n), (o). For each of these wells, RB2, RB3, RB4, RB1 Redrill, and NMC, the Indictment alleged Rand was involved in a scheme to defraud investors. ECF No. 1 ¶¶ 2-9.

The Government charged Rand with the following in the Indictment:

1. Counts 1-5 (Securities Fraud in violation of 15 U.S.C. §§ 78a and 78j(b) and 17 C.F.R. Section 240.10b-5);
2. Counts 6-10 (Mail Fraud in violation of 18 U.S.C. § 1341)
3. Counts 11-13 (Mail Fraud in violation of 18 U.S.C. § 1341)
4. Counts 14-17 (Mail Fraud in violation of 18 U.S.C. § 1341)
5. Counts 18-21 (Mail Fraud in violation of 18 U.S.C. § 1341)
6. Counts 22-25 (Mail Fraud in violation of 18 U.S.C. § 1341)

ECF No. 1 ¶¶ 10-23.

Relevant in this case, Count 25 charged Rand with Mail Fraud in violation of 18 U.S.C. § 1341. ECF No. 1 at 12-13. According to Count 25, on July 31, 2003, Rand received mail correspondence from an "NMC Investor with initials BN" with an investment check in the amount of $50,000 to be invested in the NMC well. *Id.* This mail correspondence was addressed to Rand at "Jeff Rand 113 Buena Vista Hot Springs, AR." *Id.*

### B.     Changes in Counsel and Multiple Continuances

On March 10, 2010, Rand appeared for an arraignment before the undersigned. ECF No. 9. At this arraignment, Rand appeared with his retained counsel, Catherine Baen. *Id.* Rand entered a plea of not guilty to Counts 1-25 of the Indictment. *Id.* A jury trial was scheduled for April 27, 2010 before the Honorable U.S. District Judge Robert T. Dawson. *Id.* Rand was released on his personal recognizance. ECF No. 9.

On March 23, 2010, Rand filed an unopposed motion to continue the trial date to November 1, 2010. ECF No. 16. In response to this request, Judge Dawson extended Rand's trial date until January 4, 2011, an additional two months after the requested extension. ECF No. 18.

Thereafter, on July 21, 2010 and July 23, 2010, Rand's counsel requested to withdraw as counsel of record. ECF Nos. 23-24. On July 26, 2010, the undersigned granted this request and set a hearing to determine whether Rand required court-appointed counsel. ECF No. 26. This hearing was originally set for August 2, 2010 but Rand requested additional time to retain counsel. ECF No. 28. The undersigned honored Rand's request and allowed him additional time to retain counsel. This hearing to consider appointment of counsel was rescheduled for September 22, 2010. At this rescheduled hearing, which was rescheduled at his request, Rand failed to appear.

Because Rand failed to appear at this rescheduled hearing, the Court was forced to enter a show cause order for Rand's failure to appear and set that hearing for October 6, 2010 in Hot Springs, Arkansas. ECF No. 30. At this hearing, Rand appeared without counsel, but Lisa Peters stood by for appointment. ECF No. 31. Rand advised the undersigned he was in the process of hiring attorney Michael Gross, but he had not yet retained Mr. Gross. *Id.* Because Mr. Gross had not yet been retained, the Court appointed Lisa Peters until Rand was able to officially retain Mr.

Gross. *Id.*

Once appointed, Lisa Peters filed an unopposed motion to continue the trial date. ECF No. 35. Judge Dawson granted the motion to continue and extended the trial date from January 4, 2011 until July 6, 2011. ECF No. 36. This new trial date was over one year after the original trial date in this action of April 27, 2010.

On March 15, 2011, Rand's counsel, Lisa Peters, filed a motion to be relieved as counsel. ECF No. 37. With her motion, she represented an "actual conflict has arisen," and she requested she be relieved of further representation. *Id.* On March 25, 2011, the undersigned granted this motion and allowed Lisa Peters to withdraw in this action. ECF No. 38. In the order granting this motion, the undersigned appointed Mr. Morse Gist to represent Rand. *Id.* At the time of Mr. Gist's appointment on March 25, 2011, Rand's trial date was still set for July 6, 2011, which was fourteen weeks away.

On June 7, 2011, Rand's counsel, Morse Gist, moved for a third continuance of the trial date. ECF No. 39. In this motion, Rand's counsel represented he needed an extension to sufficiently prepare for trial and also stated "the parties are in plea negotiations and intend to meet in the near future to discuss same." *Id.* Because Judge Dawson had previously granted two continuances at Rand's request and had previously extended the trial date by over one year, Judge Dawson denied this motion finding "no good cause" existed for further delay and ordered the trial remain set for July 6, 2011. ECF No. 40. Judge Dawson then set the pretrial conference in this matter for June 28, 2011 in Fort Smith, Arkansas.

### C.     **Change of Plea and Plea Agreement**

On June 28, 2011, Rand appeared with counsel Mr. Gist before Judge Dawson and entered

a plea of guilty to Count 25 of the Indictment. ECF No. 42. Rand and the Government entered into a Plea Agreement and submitted it to the Court. ECF No. 45. As a part of this Plea Agreement, Rand admitted to the following: "By letter dated May 28, 2003, Rand solicited and thereafter obtained money for investors for the completion of the NMC Morris No. 1 Well by falsely representing to investors that Wave was commencing the completion of the well when in fact Wave was not the driller/operator of the well and never paid any money received for investors as completion costs to the driller/operator for completing the well." *Id.* at 3.

Under the terms of the Plea Agreement, Rand agreed the "most readily provable loss amount is more than $2,500,000 but less than $7,000,000." ECF No. 45 ¶ 10. Rand also agreed "the number of victims involved was more than 10 but less than 50." *Id.* Rand agreed that for Count 25 he faced a maximum term of imprisonment for 20 years, a maximum fine of $250,000, both imprisonment and a fine, a term of supervised release of not more than 5 years, the possibility of going back to prison if he violates the conditions of supervised release, and a special assessment of $100.00. *Id.* ¶ 11.

Further, and as part of the Plea Agreement, Rand represented he was "satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it" and represented he had "entered into this plea agreement freely, voluntarily, and without reservation. . . ." ECF No. 45 ¶ 28.

After Judge Dawson received the Plea Agreement, Rand was released, pending sentencing, for over one year on a bond with certain conditions. ECF No. 44. Sentencing was not set until August 27, 2012. Despite this already long delay between the change of plea hearing and the sentencing hearing, Rand requested the sentencing hearing set for August 27, 2012 be continued.

Judge Dawson denied this Motion and continued with the August 27, 2012 setting for sentencing.

### D. Pre-sentence Investigation Report and Sentencing

In the interim, the U.S. Probation Office prepared a PSR at Judge Dawson's direction. The PSR found Rand's base offense level to be 6 pursuant to U.S.S.G. § 2B1.1. ECF No. 50 ¶ 31. The PSR increased his base offense level by 20 since the loss exceeded $7,000,000.00 and increased his base offensive level by 4 since the number of victims exceeded 50. *Id.* ¶ 33-34. Rand received a 2 level reduction for acceptance of responsibility and the Government also recommended an additional 1 level reduction, which resulted in a total offense level of 27. *Id.* ¶ 39. The PSR found Rand to have no criminal history. *Id.* ¶¶ 42-45. This resulted in a U.S.S.G. range of 70 to 87 months imprisonment, a term of supervised release from 1 to 3 years, a fine range of $12,500 to $125,000, and a mandatory special assessment of $100.00 per count. *Id.* ¶ 56.

On August 27, 2012, Rand appeared before Judge Dawson for sentencing. ECF No. 49. During the sentencing, Judge Dawson confirmed Rand was satisfied with counsel and determined he had the opportunity to read and discuss the PSR. *Id.* Also during this hearing, Rand's counsel withdrew any objections to the PSR as to the amount of loss or number of victims: "Your Honor, that was just reiteration by the probation office as to the loss amounts and number of victims, and I think we've clarified that or the Court has clarified that. *So we'll–any objection, we are withdrawing that.*" ECF No. 63 at 10 (emphasis added).

After hearing arguments from Rand's counsel, Judge Dawson determined Rand's offense level to be a 26 with an additional 3 point reduction for acceptance of responsibility and determined the advisory guideline range to be 46-57 months. ECF No. 63 at 12. Based upon that calculation, Judge Dawson then sentence Rand to 57 months in prison, $7,921,435.96 in restitution, three years

of supervised release, and a $100.00 special assessment for Count 25 of the Indictment. *Id.* The remaining 24 counts in the Indictment were dismissed. *Id.*

### E. Appeal to the Eighth Circuit

On September 7, 2012, Rand appealed to the U.S. Court of Appeals for the Eighth Circuit. ECF No. 56. Rand's counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), addressing the reasonableness of Rand's sentence. After considering Rand's arguments, the Eighth Circuit, in a *per curium* opinion, affirmed Rand's conviction in an opinion filed May 3, 2013. ECF No. 70-1.

## 2. **Instant Motion**:

On May 8, 2014, Rand filed a timely Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. ECF No. 72. The Court directed a response, and the Government filed its Response on August 1, 2014. ECF No. 75. With leave of Court, Rand also replied to the Government's Response. ECF No. 78.

With this Motion, Rand raises four arguments with his request for relief:

1. The Court abused its discretion in denying his third motion for continuance;

2. His counsel was ineffective;

3. The "error of fact regarding the amount of loss to the victims was so fundamental as to render the entire proceeding invalid"; and

4. The "miscalculation of total loss to the victims in this case" was a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

ECF No. 72. This matter is now ready for decision.

## 3. **Discussion**:

Rand requests relief under 28 U.S.C. § 2255. ECF No. 72. A § 2255 motion is

fundamentally different from a direct appeal. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

As noted above, Rand requests relief based upon four claims. The Government has responded to each of these claims. ECF No. 75. The Court will address each of these issues.

    **A.**    **Denial of Third Motion for Continuance**

Rand first claims he is entitled to relief because Judge Dawson denied his third motion for continuance. ECF No. 72 at 13-17. This motion for continuance was made on June 7, 2011. *See* ECF No. 39. Specifically, Rand claims the following: "[t]he Court abused its discretion in denying the third motion for a continuance when there were compelling reasons to grant the motion and petitioner was prejudiced when he was forced to choose between proceeding to trial with an ill-prepared counsel or changing his plea." ECF No. 72 at 13-17.

Upon review of Rand's claim on this issue, there is no indication Judge Dawson abused his discretion when he denied Rand's third motion for continuance. "District courts have broad discretion when ruling on requests for continuances." *United States v. Jones,* 643 F.3d 275, 277 (8th Cir. 2011). "Continuances generally are not favored and should be granted only when the party requesting one has shown a compelling reason." *Id.* (internal quotation omitted). A constitutional violation only occurs where the courts exhibits "an unreasonable and arbitrary insistence upon expeditiousness in the face of [a justifiable] excuse for delay." *United States v. Bonilla-Siciliano,* 643 F.3d 589, 591 (8th Cir. 2011) (*quoting White v. Lockhart,* 857 F.2d 1218, 1220 (8th Cir. 1998)). To prevail, a defendant must establish that the court's decision was "so egregious that it was

fundamentally unfair." *Id.* (internal quotations omitted).

To determine whether an abuse of discretion has occurred, the Eighth Circuit has instructed that a court consider the following factors: "(1) whether counsel had sufficient time to prepare for trial; (2) whether counsel's conduct at trial shows that counsel was well prepared; and (3) whether the denial of the continuance prejudiced the defendant." *United States v. Joos,* 638 F.3d 581, 586 (8th Cir. 2011). Whether the denial was so arbitrary as to violate due process depends upon the circumstances of the case and the reasons the defendant presented to the trial judge at the time of this request. *White,* 857 F.2d at 1220.

In the present action, the Indictment against Rand had been pending since March 5, 2008. ECF No. 1. On two occasions, both at Rand's request, Judge Dawson continued the trial date in this matter. *See* ECF Nos. 18, 36. This continuances were granted despite Rand's efforts–either intentionally or otherwise–to delay these proceedings by not securing counsel and failing to attend a hearing where the undersigned attempted to appoint Rand new counsel. *See* ECF Nos. 30, 34.

Further, in considering the factors listed in *Joos,* the Court finds Rand has not demonstrated Judge Dawson in any way abused his discretion. First, in considering "whether counsel had sufficient time to prepare for trial," the Court finds Rand's counsel, Morse Gist, had fourteen weeks to prepare for trial (from the time of appointment to the trial date). This time period was entirely sufficient considering the fact Rand's other counsel had been working on his case for over three years by that point. *See* ECF No. 38 (order dated March 25, 2011).

Second, the Court should consider whether counsel's conduct at trial shows that counsel was well prepared. Even though Rand's case did not go to trial, the transcript from the sentencing hearing before Judge Dawson demonstrates Mr. Gist had a solid grasp on the allegations against

Rand and the facts surrounding the allegations. ECF No. 63. As Judge Dawson stated at the time, Rand had "good legal representation in connection with this matter." *Id.*

Third, in considering "whether the denial of the continuance prejudiced the defendant," Rand claims he was prejudiced by Judge Dawson's denial of a third continuance. ECF No. 72 at 13-17. Specifically, Rand claims because this continuance was denied, he was "forced by the Court's denial to change his plea to guilty." *Id.* at 17.

Despite Rand's claim on this matter, however, there is absolutely no evidence Rand was forced or coerced in any way to enter a guilty plea. As Rand correctly notes, a plea must be made "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Ruiz,* 536 U.S. 622, 628 (2002) (*quoting Brady v. United States,* 397 U.S. 742, 748 (1970)). In this case, Rand himself acknowledged his plea met those requirements. At the change of plea hearing on June 28, 2011, Rand agreed that he understood the Plea Agreement and agreed to its terms:

> The Court:   Does this Plea Agreement, Mr. Rand, contain your full understanding of what you've negotiated with the government?
>
> A:   Yes, sir.
>
> The Court:   And do you understand the agreement?
>
> A:   Yes, sir.
>
> The Court:   And has anyone made any promises or assurances to you of any kind to get you to execute the Agreement other than what's actually reflected and contained within the Agreement?
>
> A:   No, sir.
>
> . . .

| | | |
|---|---|---|
| The Court: | Has anyone, sir, in any way attempted to force you to plead guilty? | |
| A: | No, sir. | |
| The Court: | Are you pleading guilty of your own free will because you are guilty? | |
| A: | Yes, sir. | |

ECF No. 67 at 4-5.  Thus, the Court cannot find Rand was prejudiced by Judge Dawson's denial of his third requested continuance.

### B. Ineffective Assistance of Counsel

Rand claims his counsel was ineffective.  ECF No. 72 at 17-24.  Rand raises three specific ineffective assistance of counsel claims: (i) his counsel unreasonably instructed him to plead guilty despite the fact he possessed "exonerating evidence" related to Rand's alleged crimes; (ii) his counsel "failed to present evidence to significantly lessen the amount of loss and number of victims calculated in the initial investigation and pre-sentence report"; and (iii) his counsel was ineffective for not explaining the terms of the plea agreement.  *Id.*  The Court will address each of these claims.

As an initial matter, in order to prevail on an ineffective assistance of counsel claim, a movant must show: (1) his "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence", and (2) "the deficient performance prejudiced [his] defense." *See Toledo v. United States*, 581 F.3d 678, 680 (8th Cir. 2009) (*quoting Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir.1995)).  When considering the first element, there is a "strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy."  *Toledo*, 581 F.3d at 680 (*quoting Garrett v. United States*, 78 F.3d 1296, 1301 (8th Cir.1996) (*citing Strickland v. Washington*, 466 U.S. 668, 689,(1984)).  "The burden of proving ineffective assistance of counsel rests with the defendant." *United States v. White*, 341 F.3d 673, 678

(8th Cir. 2003)(*citing United States v Cronic*, 466 U.S. 648, 658 (1984)).

Under the first prong of the *Strickland* test, the Court considers counsel's performance objectively and gauges whether it was reasonable "under prevailing professional norms" and "considering all the circumstances." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000)(citations omitted). The Court should examine counsel's challenged conduct at the time of his representation of the defendant and avoids making judgments based on hindsight. *See id.* There is typically no basis for finding a denial of effective counsel unless a defendant can show specific errors that "undermined the reliability of the finding of guilt. . ." *White,* 314 F.3d at 678. If, however, "counsel completely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights making the adversary process presumptively unreliable [and no showing of prejudice is required]." *See id.*

If the Court finds deficient counsel and thus must consider the second prong, prejudice, a defendant must establish "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Prejudice can only be found if, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir. 1992).

i. **Allegedly Exonerating Evidence**

Rand claims his counsel was in possession of "exonerating evidence" which proves the amount of loss did not exceed $7,000,000.00. ECF No. 72 at 19-20. This "exonerating evidence" consists of an unexecuted draft settlement agreement between Rand and victims of Rand's fraudulent scheme who sued Rand in district court in Jim Hogg County, Texas ("2007 Cicur Settlement

Agreement"). *See* ECF No. 72-7. Rand claims this "exonerating evidence" demonstrates he is not liable for over $7,000,000.00 because many of the claims against him had already been settled. ECF No. 72 at 19-20.

Rand also has provided the Court with another unexecuted document entitled "Assignment of Oil and Gas Leases" as well as a transcribed phone conversation which he claims demonstrates he could lawfully drill the NMC well. *See* ECF Nos. 72-10, 72-12, 72-13, 72-14. Rand claims this evidence is also "exonerating evidence." ECF No. 72 at 19-20.

Upon review of this evidence Rand submitted, none of this evidence demonstrates that he was innocent of the crimes charged or that his counsel was ineffective for failing to rely upon this evidence. For instance, the 2007 Cicur Settlement Agreement at best demonstrates he had a possible (unexecuted) settlement agreement between himself and several of his victims. There is no indication this document was ever executed or money was ever paid. Further, had this settlement agreement been admitted before a jury in this criminal matter, it could easily have caused them to believe he was guilty of the alleged conduct because he had voluntarily settled and agreed to pay for his wrongdoing. Thus, the Court finds his counsel was not deficient for choosing not to rely on this evidence.

His other allegedly "exonerating evidence" is a transcript from telephone conversation between himself, Dick DeGuerin, Catherine Baen, and Greg Rand.[2] ECF Nos. 72-12, 72-13, 72-14. During this conversation, Greg Rand and Rand speculated as to whether written documentation

---

[2] Greg Rand is Rand's brother. Greg Rand was indicted in the U.S. District Court for the Northern District of Texas on May 6, 2009 for charges similar to the charges against Rand. *See United States v. Rand,* 3:09-cr-120, ECF No. 1 (N.D. Tex. 2009). On July 27, 2011, Greg Rand pled guilty and was sentenced to 216 months in prison and was ordered to pay $99,707,758.04 in restitution.

existed establishing Rand's "working interest" or the right to drill the NMC well. *Id.* Ultimately, they agreed they needed written documentation to establish his interest. As Rand's former attorney, Dick DeGuerin, even stated: "But the document itself is what we need." ECF No. 72-12 at 12.

Despite the fact that even his own attorney stated he needed written documentation to support his claim, Rand can not supply documentation to establish he or Wave had any interest in the NMC well.[3] Based upon this review, as with the other evidence Rand has submitted, this transcript is certainly not "exonerating evidence" and in fact could have been seen as incriminating. It certainly does not demonstrate Rand's counsel was deficient in his decision to not rely upon this evidence.

   **ii.**  **Loss and Victim Number**

Rand claims his counsel was ineffective for advising him to enter into the Plea Agreement stipulating to a high amount of loss and a large number of victims when Rand had already settled a civil lawsuit with some of the victims from the criminal case. ECF No. 72 at 21-23. As noted above, this was the "2007 Cicur Settlement Agreement." Rand believes this settlement agreement should have reduced his amount of loss and victim number. *Id.*

Despite his claim on this issue, however, the only evidence Rand has submitted of this settlement is an unexecuted settlement agreement. *See* ECF Nos. 72-7, 72-8. As noted above, there is no evidence Rand had actually paid the judgment at the time of plea agreement, sentencing, or at

---

[3] In an attempt to supply some documentation, Rand did attach with his reply a partially unreadable two-sentence letter dated June 5, 2003 purportedly from Greg Rand which recognizes Rand's interest in the NMC well: "Dear Jeff, Per our conversation, Wave is committing to 15% - 17% of Monte Christo Morris #1 well instead of its right to 50%. Please confirm final [unreadable] so we can bill completion accordingly." ECF No. 78-1. While this letter may reflect Greg Rand's belief that Rand had an interest in the NMC well, it certainly does establish Rand had an actual interest in the NMC well.

any other time. Further, this settlement agreement, if it had been used by Rand's counsel, just as likely would have demonstrated Rand's guilt, not his innocence, and demonstrated he had fraudulently taken money from prospective investors. Further, even had this settlement agreement been executed and fulfilled by Rand, it would not excuse him for his own criminal conduct. *See United States v. Stennis-Williams*, 557 F.3d 927, 929-30 (8th Cir. 2009) ("Payments [defendant] made to the estate during the civil suit do not diminish her culpability for the underlying fraud, . . . 'Loss is a proxy for the seriousness of the offense and a defrauder cannot purchase a shorter term by a belated return of the proceeds'"). Thus, the Court cannot find Rand's counsel was deficient for his decision to not rely upon the unexecuted 2007 Cicur Settlement Agreement.

### iii.    Plea Agreement

Rand claims his counsel was ineffective for his failure to advise him of the terms of the plea agreement. ECF No. 72 at 23-24. Specifically, Rand claims he was under the impression the Plea Agreement he signed was "substantially the same as the previous offers made during earlier negotiations" with his former counsel wherein he was promised to be convicted of a misdemeanor and be sentence to probation only. *Id.*

In support of his claim that a prior offer was for probation only, Rand has attached a letter from his former counsel, Dick DeGuerin, to the an attorney in the U.S. Attorney's Office.[4] ECF No. 72-11. In that letter, Mr. DeGuerin requests probation for his client. *Id.* In fact, the letter itself references Rand's "counter-offer" including up to $5,000,000.00 in restitution payments and his

---

[4] At least, it appears this is the document Rand is referencing in support of his claim. He references "Exhibit F" as demonstrating the "earlier plea negotiations" were that he "would be convicted of a misdemeanor and be sentenced to probation only." However, "Exhibit F" is an "Assignment of Oil and Gas Leases" and has nothing to do with plea negotiations. Thus, it appears Rand is actually referencing Exhibit G.

pleading guilty to at most a misdemeanor count. Rand has presented no evidence the U.S. Attorney's Office ever offered probation or a misdemeanor as part of a possible plea agreement. Other than his own offer to plead to a misdemeanor, Rand has offered no evidence as to why he believed probation or a misdemeanor charge were even a possibility.

Further, even if this were part of the initial discussion between Rand and the Government, as noted above, Rand represented to the Court he understood the Plea Agreement and its terms on the day he plead guilty. ECF No. 67 at 4-5. Rand cannot now claim–without supporting evidence–that he did not know what the Plea Agreement stated. The Court cannot find Rand's counsel deficient by failing to advise Rand of the terms of the plea agreement, when he was in fact clearly advised of those terms.

### C. Restitution Calculation

Rand claims the restitution amount of over $7,000,000.00 was incorrect and "was so fundamental" an error "as to render the entire proceeding invalid." ECF No. 72 at 24-25. In making this claim, Rand is challenging the amount of restitution he was ordered to pay. *Id.*

Despite this claim, the Eighth Circuit has clearly held the amount of restitution cannot be challenged with a Section 2255 motion.[5] *See Shephard v. United States,* 735 F.3d 797, 798 (8th Cir. 2013) (reaffirming an earlier holding that "a federal prisoner cannot challenge the restitution portion of his sentence under section 2255, because the statute affords relief only to prisoners claiming a right to be released from custody" (*quoting United States v. Bernard,* 351 F.3d 360 (8th Cir. 2003))).

---

[5] The Government states it could find no Eighth Circuit case directly addressing this issue. ECF No. 75 at 40. However, the *Shephard* case clearly does.

### D. Eighth Amendment Cruel and Unusual Punishment

With this argument, Rand again claims the restitution amount is improper. ECF No. 72 at 26-27. However, instead of challenging the amount directly, Rand claims this amount is so excessive that violates the Eighth Amendment as cruel and unusual punishment. *Id.* Despite this attempt to re-frame the argument, Rand is still attacking the restitution amount, which is improper under *Shephard*. Thus, the Court will not address this argument any further.

### 4.  Evidentiary Hearing:

Based on the record in this case, I also conclude an evidentiary hearing is not required in this matter. Rand is clearly not entitled to the relief he seeks.[6] Further, I find Rand has not made a substantial showing of the denial of a constitutional right, and any request for a certificate of appealability should be denied as well.

### 5. Recommendation:

Accordingly, based on the foregoing, it is recommended the instant motion be **DENIED** and dismissed with prejudice. Pursuant to 28 U.S.C. § 1915(a), I recommend the finding that an appeal from dismissal would not be taken in good faith. Finally, I find a certificate of appealability should be **DENIED** because Rand has not made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

**The Parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

---

[6] *See Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir.2006) (holding that a § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact).

**objections may result in waiver of the right to appeal questions of fact. The Parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

    **DATED** this **22nd day of June 2015.**

                                                                        /s/ Barry A. Bryant
                                                                        HON. BARRY A. BRYANT
                                                                        U.S. MAGISTRATE JUDGE